**Richard A. BENDIS, W. Terrance Schreier, Robert H. Mann, Jr., and John G. Pappajohn, Appellants,**

v.

**ALEXANDER AND ALEXANDER, INC., Respondent.**

**No. WD 50698.**

Missouri Court of Appeals,
Western District.

Nov. 28, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied
March 26, 1996.

David W. White, Alan V. Johnson, William F. Logan, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Overland Park, Kansas, for appellants.

Eric T. Swanson, Theresa Shean Hall, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., FENNER, C.J., and LAURA DENVIR STITH, J.

LAURA DENVIR STITH, Judge.

Plaintiffs–Appellants Richard A. Bendis, W. Terrance Schreier, Robert H. Mann, Jr., and John Pappajohn, appeal the trial court's grant of Defendant–Respondent's Alexander & Alexander's Motion for Summary Judgment on the basis of *res judicata.*

Plaintiffs concede that the claims raised in the instant suit are identical to claims previously brought by them against the same defendant in the United States District Court for the District of Kansas in the case styled *Bendis, et al. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al.,* Case No. 91–2192–KHV (the "Kansas lawsuit"). Plaintiffs nevertheless contend that their claims are not precluded under the doctrine of *res judicata* because the federal court sitting in *Kansas* could not determine a key issue before this *Missouri* court in this Missouri-filed case—what statute of limitations would apply under the Missouri borrowing statute, § 516.190, RSMO 1994.

Assuming their claims are not precluded by *res judicata*, Plaintiffs also contend that under the Missouri borrowing statute, the New York statute of limitations applies, and that their claims are not time-barred under the latter statute of limitations.

For the reasons set forth below, the judgment of the trial court granting Alexander & Alexander's Motion for Summary Judgment on the grounds of *res judicata* is affirmed.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiffs–Appellants are former officers and directors of Continental Health Care Systems, Inc, ("CHSI"), a corporation engaged in the business of leasing television sets and selling turnkey computer systems to hospitals. CHSI was a Kansas corporation with its principal corporate offices located in Overland Park, Kansas. Plaintiffs Bendis and Schreier are residents of Kansas, while Mann resides in Missouri, and Pappajohn resides in Iowa.

Defendant–Respondent Alexander & Alexander, Inc. is a Maryland Corporation which is authorized to do business in Kansas and Missouri. In May, 1984, CHSI designated Alexander & Alexander as its insurance broker. In May, 1986, Alexander & Alexander procured insurance for CHSI and for Plaintiffs, as its officers and directors, through Federal Insurance Company ("Federal") and Hartford Accident & Indemnity Company ("Hartford").[1]

In June, 1986, CHSI merged with TBG, Inc. Following the merger, Plaintiffs left their positions as officers and directors of CHSI. In June, 1988, TBG filed suit against all four Plaintiffs in the United States District Court for the Southern District of New York claiming that Plaintiffs provided false and misleading information to TBG regarding CHSI's financial status. *TBG, Inc. v. Bendis, et al.*, Case No. 89–2423 (the "TBG lawsuit"). TBG's complaint alleged that Plaintiffs intentionally violated federal security laws and asserted common law claims of fraud and negligent misrepresentation. Plaintiffs moved to transfer the lawsuit to the District Court of Kansas on the ground that most of the parties and witnesses resided in or near the Kansas City metropolitan area. The case was subsequently transferred to the United States District Court for the District of Kansas where it is still pending.

Following the filing of the TBG lawsuit against them, Plaintiffs made demand upon Federal and Hartford to provide Plaintiffs with a legal defense and indemnity in the TBG lawsuit. Both Federal and Hartford denied coverage under their policies. Plaintiffs subsequently filed separate suits against Federal and Hartford in the United States District Court for the District of Kansas seeking coverage to satisfy any judgment that might be rendered against them in the TBG lawsuit and payment of the legal defense of that lawsuit. *Bendis, et al. v. Federal Ins. Co.*, Case No. 89–2035; *Bendis, et al. v. Hartford Accident & Indemnity Co., et al.*, Case No. 90–2198. The Kansas District Court granted judgments in both lawsuits against Plaintiffs and in favor of Federal and Hartford, respectively.[2]

In June, 1991, Plaintiffs filed suit against Alexander & Alexander, again filing in the United States District Court for the District of Kansas. *Bendis, et al. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al.*, Case No. 91–2192–KHV (the "Kansas lawsuit"). Plaintiffs alleged that Alexander & Alexander was hired by CHSI as its insurance broker and risk manager and that it: (1) failed to perform a risk evaluation for CHSI; (2) failed to obtain insurance which would have provided indemnity and a defense for claims alleging violation of the federal securities law in the TBG lawsuit; and (3) failed to obtain insurance which would have provided

---

1. In May, 1986, Federal issued Executive Risk Policy No. 81–019302–A which named CHSI and its officers and directors as insured parties. On the same date, Hartford issued a Comprehensive General Liability Insurance Policy No. 37–UUN–PP076 for the benefit of the officers and directors of CHSI.

2. In December, 1989, the District Court granted Federal's Motion to Dismiss in the lawsuit filed against it. In September, 1993, the District Court also granted summary judgment in favor of Hartford in the lawsuit filed against it.

indemnity and defense for the common law claims, including fraud and negligent misrepresentation, raised in the TBG lawsuit.

In July, 1993, Alexander & Alexander filed a Motion for Summary Judgment in the Kansas federal court lawsuit on the ground that Plaintiffs' claims were barred by the applicable Kansas statute of limitations. Plaintiffs argued that the claims were not barred by the Kansas statute because Kansas would borrow the longer Missouri statute of limitations. The District Court granted Alexander & Alexander's Motion on the basis that Kansas would apply its own statute of limitation as to Plaintiffs' claims that Alexander & Alexander: (1) failed to perform a risk evaluation for CHSI; and (2) failed to obtain insurance which would have provided a defense for the securities fraud claims asserted in the TBG lawsuit. In so ruling, the District Court held that the Kansas borrowing statute, K.S.A. 60–516, borrows the statute of limitations of the state where the cause of action arose *only* if the latter state's statute of limitations is shorter than the applicable Kansas statute. Because Kansas' statute of limitations is shorter than that of Missouri, the District Court determined that the Kansas statute of limitations, and not Missouri's, applied and that Plaintiffs' claims *were* time-barred under Kansas' two-year limitation period for tort claims, K.S.A. 60–513, as well as under Kansas' three-year limitation period for oral contract claims, K.S.A. 60–512.

Plaintiffs only remaining claim alleged that Alexander & Alexander acted negligently and breached its contractual duty to obtain coverage for the indemnification and defense of the common law claims of fraud and negligent misrepresentation arising out of the TBG lawsuit. This claim was tried in the Kansas lawsuit in November, 1993. Following the close of Plaintiffs' evidence, the District Court granted a directed verdict for Alexander & Alexander. The United States Court of Appeals for the Tenth Circuit affirmed this judgment and further affirmed the grant of summary judgment in favor of Alexander & Alexander on statute of limitations grounds in *Bendis, et al. v. Alexander & Alexander,* Case No. 93–3401 (10th Cir. Sept. 14, 1995).

In December, 1993, Plaintiffs filed the current lawsuit against Alexander & Alexander in the Circuit Court of Jackson County, Missouri. That suit asserted only two claims, both of which Plaintiffs concede are identical to the claims as to which summary judgment was granted against them in the Kansas federal court lawsuit just discussed. Specifically, they alleged that Alexander & Alexander: (1) failed to perform a risk evaluation for CHSI; and (2) failed to obtain insurance which would have provided indemnity and a defense for claims alleging violation of the federal securities law in the TBG lawsuit.

Alexander & Alexander answered, asserting the affirmative defenses of *res judicata* and statute of limitations based on the judgment rendered in the Kansas lawsuit. It later moved for summary judgment on this ground. The trial court sustained Alexander & Alexander's Motion and entered judgment in favor of Alexander & Alexander. This appeal followed.

## II. THE TRIAL COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON THE GROUNDS OF RES JUDICATA

Plaintiffs contend that the trial court erred in granting summary judgment in favor of Alexander & Alexander on the grounds of *res judicata.* Recognizing that the claims asserted against Alexander & Alexander in the instant lawsuit are identical to the claims resolved against Plaintiffs in the Kansas lawsuit, they further concede that if this Court determines that the Kansas statute of limitations applies, then their claims are *res judicata* because that issue was resolved against them in Kansas. Plaintiffs nevertheless contend that *res judicata* is not applicable because they now claim that their claims arose in New York and under Missouri's borrowing statute, Missouri would apply the statute of limitations of New York because it is *longer* than the Missouri statute of limitations. Plaintiffs then suggest that, because the federal district court sitting in *Kansas* did not decide and could not have decided how *Missouri* would apply its own borrowing statute to claims *filed in Missouri, res judicata* does

not apply because this single issue could not have been adjudicated in the Kansas lawsuit.

### A. *Standard of Review.*

■ Review of an order granting summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and the latter is given the benefit of all reasonable inferences from the record. *Id.* Unless the moving party establishes that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, summary judgment is not appropriate. Rule 74.04; *ITT Commercial Fin.,* 854 S.W.2d at 380–82.

### B. *Plaintiffs' Claims are Barred by the Doctrine of Res Judicata.*

■ *Res judicata* is based on the principle that "a party should not be allowed to litigate a claim and then, after an adverse judgment, seek to relitigate the identical claim in a second proceeding." *Andes v. Paden, Welch, Martin & Albano, P.C.,* 897 S.W.2d 19, 21 (Mo.App.1995). *Res judicata* thus protects the adversaries of parties who have had a full and fair opportunity to litigate their claims from "the expense and vexation attending multiple lawsuits." *Fleming v. Mercantile Bank & Trust Co.,* 796 S.W.2d 931, 933–34 (Mo.App.1990) (citations omitted). *Res judicata* also "conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (citations omitted).

■ In order for *res judicata* to apply, four factors must be present:

(1) An identity of the thing sued for;

(2) an identity of the cause of action;

(3) an identity of the persons and parties to the action; and

(4) an identity of the quality of the person for or against whom the claim is made.

*Barkley v. Carter County State Bank,* 791 S.W.2d 906, 910 (Mo.App.1990). As *Barkley* explained, the effect of *res judicata* is to bar the same parties from bringing a subsequent proceedings as to:

*every issue of fact which was or might have been litigated* in the first proceeding ... Furthermore, a former judgment is not only conclusive as to matters in issue and embraced within the issue, but *as to all matters which the parties could have alleged* to sustain their action or defense. *Id.* at 910–11 (citations omitted) (emphasis added).

It is uncontested that the thing sued for, the parties, and the quality of the person are identical in the instant lawsuit and in the Kansas lawsuit. Therefore, the only issue to be addressed by this Court is whether there is an "identity of cause of action" between the instant suit and the Kansas lawsuit.

■ The test to be applied by this Court in determining whether there is an identity of causes of action was explained in *Andes v. Paden, Welch, Martin & Albano, P.C.,* 897 S.W.2d 19, 21 (Mo.App.1995). The plaintiff in *Andes* first filed suit in federal court under the federal wiretap law. This suit was dismissed on statute of limitations grounds. The plaintiff then filed suit in state court based on the same underlying facts but asserting common law claims of invasion of privacy, conspiracy, and intentional infliction of emotional distress. Defendants contended that the second suit was precluded by the doctrine of *res judicata.*

*Andes* first noted that a dismissal on the ground of the statute of limitation is a final judgment *on the merits* for the purposes of *res judicata. Id.* at 23. *Andes* then applied the four *res judicata* elements set forth above. In determining whether there was an identity of causes of action, *Andes* explained that the court looks at "whether the claims arose out of the same act, contract or transaction." *Id.* Moreover, plaintiff's claims are to be broadly construed to include "all of the facts and circumstances which constitute the foundation of a claim." *Id.* (citations omitted).

Applying this test, *Andes* held that even though the plaintiff's claims in state court were based on different legal theories and required the application of different law than those raised in federal court, there was an identity of causes of action because the underlying facts in both lawsuits were the same. *Id.* Thus, even though the federal

court did not apply and decide the state law claims, the state law claims were barred because they arose out of the same transaction. *See also Barkley*, 791 S.W.2d at 912 (cause of action "does not refer to the *form* of action which the claim is asserted, but to the *cause for* action, i.e., the underlying facts combined with the law giving the party a *right* to a remedy of one form or another based thereon"); *Siesta Manor Inc. v. Community Fed. Sav. & Loan Asso.*, 716 S.W.2d 835, 839 (Mo.App.1986) ("[s]eparate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief").

■ This reasoning applies here. It is uncontested that Plaintiffs are bringing the same claims against Alexander & Alexander in the instant lawsuit as were brought against Alexander & Alexander in the Kansas lawsuit. These claims are based on the same underlying facts. The causes of action are thus identical, even though the instant matter may require the Missouri court before which the suit was brought to apply Missouri law, while the Kansas lawsuit required the application of Kansas law. *See Austin v. Super Valu Stores*, 31 F.3d 615 (8th Cir.Minn.1994) (holding that dismissal of prior action in Louisiana federal court on the grounds of the statute of limitations bar subsequent action filed in Minnesota federal district court).

Plaintiffs nevertheless contend that *res judicata* does not apply to bar the claims brought in the instant lawsuit, citing to *Meier v. Thorpe*, 822 S.W.2d 556 (Mo.App.1992). In *Meier*, the first lawsuit was brought as an unlawful detainer action. After judgment was rendered in that case, defendant brought a lawsuit against the same plaintiff alleging wrongful foreclosure. The plaintiff argued that the second suit was barred by *res judicata* because it should have been a counterclaim in the first lawsuit.

*Meier* held that *res judicata* did not apply because the wrongful foreclosure could not have been brought as a compulsory counterclaim in the first suit because the trial court in that suit would not have had subject matter jurisdiction over such a claim. *Id.* at 550.

In so holding, the court noted that "[a] judgment is not conclusive of any question which, from the nature of the case or the form of action, could not have been adjudicated in the case in which it was rendered." *Id.* at 559 (citations omitted).

*Meier*, however, is distinguishable from the instant matter because it is conceded that both the Kansas and Missouri courts had subject matter jurisdiction over the claims brought in the instant lawsuit. The only difference in the two suits is, potentially, which statute of limitations applies. The statute of limitations is an affirmative defense. It has no effect on subject matter jurisdiction.

Equally fundamentally, it would defeat the purpose of the *res judicata* doctrine to accept Plaintiffs' argument that they can refile in Missouri because the Kansas court could not have addressed the application of Missouri's borrowing statute to a suit brought in Missouri. If such were the case, Plaintiffs could move from forum to forum relitigating the very same claims against the same defendants until they found a jurisdiction which would apply a statute of limitations that did not bar their claims. Potentially, if a company with a significant national presence were involved, they could bring dozens of suits, asserting in each that the local borrowing statute would apply. Avoidance of the vexation of just such multiple lawsuits is precisely the purpose of the doctrine of *res judicata*. *Hartsfield v. Barkley*, 856 S.W.2d 342, 344 (Mo.App.1993). Therefore, under the applicable principles and the stated policy of bringing litigation to an end, we hold that *res judicata* applies to bar the instant lawsuit.

■ Finally, we note that Plaintiffs' argument that Missouri could borrow the *longer* statute of limitations of New York flies in the face of the very purpose of borrowing statutes. Borrowing statutes were enacted to prevent a plaintiff from avoiding the short statute of limitations of the state where the claim arose by shopping around for a jurisdiction with a longer statute of limitations. *Finnegan v. Squire Publishers, Inc.*, 765 S.W.2d 703, 705 (Mo.App.1989). To prevent such "forum shopping," a vast majority of the states have adopted borrowing statutes under which they will apply the shorter of the statute of limitations of the place where the

claim arose or their own statute of limitations. Symeon C. Symeonides, *Louisiana Conflicts Law: Two Surprises,* 54 La.L.Rev. 497, 532–33 (1994). In accordance with this purpose, Missouri has long held that it will borrow another State's statute of limitations only if it is *shorter* than that of Missouri. *Jenkins v. Thompson,* 251 S.W.2d 325, 328 (Mo.1952) ("where the remedy is denied the suiter in the state where his cause of action arose, it is denied him here. If it is not denied to him in the state where the cause arose, it may be denied to him here by our statute of limitations."); *Keaton v. Crayton,* 326 F.Supp. 1155, 1158 (W.D.Mo.1970). We decline Plaintiffs' invitation to change this rule.[3]

For these reasons, the judgment of the trial court granting Alexander & Alexander's Motion for Summary Judgment is affirmed. Because we affirm dismissal on this ground, we need not address Plaintiffs' remaining claims.

All concur.

---

**3.** Respondent's request for damages for frivolous appeal is denied.