Forest R. DELHAGEN and Carolyn L. Delhagen, Plaintiffs–Appellants,

v.

MIRACLE RECREATION EQUIPMENT COMPANY, INCORPORATED, Defendant–Respondent.

No. 20228.

Missouri Court of Appeals, Southern District, Division Two.

June 21, 1996.

Jerry L. Holcomb, Collins, Webster & Rouse, P.C., Joplin, for appellants.

Spencer J. Brown, Deacy & Deacy, Kansas City, for respondent.

SHRUM, Chief Judge.

Plaintiffs appeal from a summary judgment which determined that the doctrine of res judicata prohibited them from pursuing their alleged causes of action against Defendant. Plaintiffs challenge the summary judgment on two grounds. First, they argue that their Missouri cause of action was different from that litigated in Florida; hence a res judicata defense was not available to Defendant. Second, they contend that the Florida judgment was procured by fraud, and consequently it was not entitled to full

faith and credit. This court affirms the judgment for Defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are gleaned from pleadings, affidavits, exhibits, and admissions in the record.

In 1990, Plaintiffs filed a personal injury lawsuit in Manatee County, Florida, against Vowels, Inc. (hereinafter "Vowels") for damages allegedly sustained by them when a restaurant stool occupied by Plaintiff Forrest R. Delhagen collapsed. The incident occurred in a McDonald's restaurant operated by Vowels.

When Vowels filed responsive pleadings, it also filed a third-party complaint against Defendant and Setmakers, Inc. (hereinafter "Setmakers"), seeking indemnity and contribution from those firms for any sums Plaintiffs might recover from Vowels. In part, the third-party complaint alleged that Vowels had purchased the stool in question from Setmakers and that Setmakers had "negligently manufactured and/or designed [the stool]." In paragraph 6 of the third-party complaint, Vowels alleged that "[u]pon information and belief ... Defendant ... has taken over the operations of SETMAKERS, INC. and has also assumed all obligations and liabilities of SETMAKERS, INC. as if their own."

Pleadings filed on behalf of Defendant and Setmakers answered paragraph 6 of the third-party complaint by saying: "Admitted that Setmakers, Inc. is a subsidiary of [Defendant]. All other allegations of paragraph six not specifically admitted herein are denied."

Plaintiffs later filed a first amended complaint in the Florida action in which they added Defendant and Setmakers as parties. Count I of the amended complaint was against Vowels only. Counts II, III, and IV were solely against Setmakers and sought recovery on the theories of strict liability, negligence, and breach of implied warranty based on a defective product. Count V was against Defendant and was based on the allegation found in paragraph 25:

"25. Plaintiffs ... aver that all causes of action against Third Party Defendant SETMAKERS, INC. are also properly asserted against Third Party Defendant MIRACLE RECREATION EQUIPMENT COMPANY in that ... MIRACLE ... has taken over the operation of ... SETMAKERS, INC. and has assumed all obligations and liabilities of ... SETMAKERS, INC. as if their own."

Defendant's answer to paragraph 25 was a general denial.

On March 2, 1993, the Florida court entered a judgment of $49,500 for Plaintiffs and against Setmakers pursuant to a jury verdict. However, the Florida court sustained Defendant's motion to dismiss filed at the close of Plaintiffs' case, after finding "that there [has] been no evidence adduced to support the allegations of Count V."

On March 30, 1993, Plaintiffs' Florida lawyers presented a motion to vacate the judgment for Defendant to the Florida court. In their presentation, Plaintiffs attacked the judgment on the theory that it was procured by fraud. They asserted that Defendant and Setmakers had merged as of March 29, 1984, pursuant to a written merger agreement. Further, they argued that by the articles of merger, Setmakers had ceased to exist in 1984; and, under the merger contract, Defendant had agreed to "be subject to all the debts and liabilities of Setmakers in the same manner as if it [sic] had been incurred directly by [Defendant]." The fraud argument made to the Florida court was that defense counsel had misled Plaintiffs when they filed pleadings on behalf of a nonexistent entity and also, when in their answer to Vowels' third-party complaint, they characterized the nonexistent Setmakers as a subsidiary of Defendant. Plaintiffs argued that because of these misrepresentations by defense counsel, they saw "no reason ... to question ... [or] ... investigate the status [of Setmakers,]" and instead, proceeded to trial assuming that Setmakers remained in business. The Florida court refused to vacate the questioned judgment, observing:

"I only granted a final judgment based on the fact that there was no evidence against Miracle. If you wanted a judg-

ment against Miracle, you should have put in evidence against Miracle, whatever it was, if it was the corporate status or anything else you wanted."

In 1994, Plaintiffs filed a three-count petition in Missouri seeking damages from Defendant for a sum equal to the amount of the Florida judgment against the nonexistent Setmakers. Count I seeks recovery based on Missouri's corporate merger statute, § 351.450(5), RSMo 1994. Count II seeks damages on the theory that Plaintiffs were third-party beneficiaries of Defendant's merger agreement with Setmakers. Finally, Count III is based on what Plaintiffs characterize as a "common law successor liability" theory of recovery.

Defendant responded by moving for summary judgment as to all issues pending in the Missouri case, saying that it was entitled to a judgment as a matter of law because Plaintiffs' claims were barred by res judicata principles. The trial court agreed and entered judgment for Defendant on all counts. This appeal followed.

## DISCUSSION AND DECISION

### Summary Judgment and Scope of Review

■ A defending party in a declaratory judgment action may move for a summary judgment at any time and may do so with or without supporting affidavits. Rule 74.04(b). A trial court must forthwith enter a summary judgment when requested "if a motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Supreme Court Rule 74.04(c).

" 'When a motion for summary judgment is made and supported as provided in this Rule 74.04,' i.e., when the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response,* by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that

there is a genuine issue for trial.' Rule 74.04(e)."

*ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d 371, 381 (Mo.banc 1993).

■ Review of an order granting summary judgment is essentially de novo. *Id.* Appellate courts conduct their review of a summary judgment in the light most favorable to the party against whom judgment was entered and the latter is given the benefit of all reasonable inferences from the record. *Id.* at 382.

### Res Judicata as a Bar to Plaintiffs' Claims

■ Res judicata is based on the principle that a party should not be able to litigate a claim and then, after an adverse judgment, seek to relitigate the identical claim in the second proceeding. *State ex rel. Shea v. Bossola,* 827 S.W.2d 722, 723[1] (Mo.App. 1992). "*Res judicata* thus protects the adversaries of parties who have had a full and fair opportunity to litigate their claims from 'the expense and vexation attending multiple lawsuits.' " *Bendis v. Alexander and Alexander, Inc.,* 916 S.W.2d 213, 217 (Mo.App. 1995) (citing *Fleming v. Mercantile Bank & Trust Co.,* 796 S.W.2d 931, 933 (Mo.App. 1990)). Moreover, res judicata " 'conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Bendis* at 217 (citing *Fleming* at 933–934).

■ The effect of res judicata is to prohibit the same parties from bringing a subsequent proceeding as to " '[e]very issue of fact which was or might have been litigated in the first proceeding.... Furthermore, a former judgment is not only conclusive as to matters in issue and embraced within the issue, but as to all matters which the parties could have alleged to sustain their action or defense.' " *Barkley v. Carter County State Bank,* 791 S.W.2d 906, 910–11 (Mo.App.1990) (citations omitted).

■ For res judicata to apply, "four identities" must exist: (1) an identity of the thing sued for; (2) an identity of the cause of action; (3) an identity of the persons and parties to the action; and (4) an identity of the quality of the person for or against whom

the claim is made. *King General Contractors, Inc. v. The Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501[11] (Mo.banc 1991).

In this case, Plaintiffs do not question that there is identity of the thing sued for, the parties, and quality of the person in the Missouri lawsuit and in the Florida case. However, Plaintiffs maintain that the "identity of the cause of action" element is absent in this case; that their cause of action in Florida was different from that filed in Missouri; and for those reasons, the trial court erred in applying res judicata principles as a basis for entering summary judgment for Defendant. This court disagrees.

In deciding whether there is an identity of the cause of action, Missouri courts generally look at whether the claims arose " 'out of the same "act, contract or transaction." ' " *Barkley,* 791 S.W.2d at 912 (quoting *Grue v. Hensley,* 357 Mo. 592, 210 S.W.2d 7, 10 (1948)). In this context, the term "transaction" is broadly construed to include " 'the aggregate of all the circumstances which constitute the foundation of a claim.' " *Id.*

As explained in *Siesta Manor, Inc. v. Community Federal Savings and Loan Assn.,* 716 S.W.2d 835, 839[12] (Mo.App.1986):

"Separate legal theories are not to be considered as separate claims, even if 'the several legal theories depend on different shadings of the fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.' Restatement of Judgment [sic] 2d § 24 comment c."

Here, Plaintiffs seek damages from Defendant based on an uncollected Florida judgment against Setmakers. Plaintiffs' allegations arise out of the March, 1984, merger agreement between Defendant and Setmakers and Defendant's obligation to Plaintiffs under that agreement. It is true that the first count of Plaintiffs' petition in this case seeks to impose liability on Defendant based on Missouri's corporate merger statute[1] and no such allegation was made in the Florida case. However, the cause of action is the same in both actions and the injection of the Missouri statute as well as the other claims in the second action was merely an attempt to add a new theory or ground on which the same cause of action was being advanced. *See Barkley,* 791 S.W.2d at 913.

Plaintiffs argue that the transaction addressed by Count V in the Florida action was "the manufacture and sale of an allegedly defective product by Setmakers and Miracle's liability, if any, for taking over Setmakers' operation." They characterize this as an action sounding in tort. However, we conclude that even though Plaintiffs' claims in Missouri are based on different legal theories and require the application of different law than that raised in the Florida case, there was an identity of the cause of action because the underlying facts in both lawsuits were the same. The underlying facts for Plaintiffs' claim against Defendant in the Florida case are found in Count V of that suit. It alleges that when Plaintiffs' cause of action accrued, Defendant had "taken over the operations of ... Setmakers, Inc. and ... assumed all obligations and liabilities of ... Setmakers, Inc. as if their own." Those exact same facts form the factual basis for each count of Plaintiffs' lawsuit filed in Missouri. Count V of the Florida action does not, as Plaintiffs attempt to convince us, allege that Defendant was liable in tort via the same theories advanced against Setmakers in Counts II, III, and IV in the Florida action. Rather, Count V shares the same transactional basis as all three counts of the Missouri action, i.e., Defendant's assumption of Setmakers' liability.

For these reasons, we find that res judicata does operate to bar Plaintiffs' Missouri action. The trial court did not err in granting summary judgment in that respect. Point I is denied.

---

1. In pertinent part, § 351.450(5) provides:

"(5) Such surviving ... corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged ...; and any claim existing or action or proceeding pending ... against any of such corporations may be prosecuted to judgment as if such merger ... had not taken place, or such surviving ... corporation may be substituted in its place...."

*Full Faith and Credit Given to the Florida Judgment*

■ Plaintiffs' other assignment of error, Point II, asserts that the trial court erred in entering judgment for Defendant "because the Florida judgment was not entitled to full faith and credit by the trial court because there was fraud in the procurement of the Florida judgement."

■ In developing this point, Plaintiffs concede the general rule to be that Article IV, Section I of the United States Constitution requires that Missouri courts give full faith and credit to a sister state's judgment. *See In re Veach,* 365 Mo. 776, 287 S.W.2d 753, 758–59[8] (banc 1956); *In re Aldridge,* 841 S.W.2d 793, 797[1] (Mo.App.1992). Plaintiffs insist, however, that fraud by defense counsel in the Florida proceedings brings them within the long established exception that full faith and credit is not mandated for a foreign judgment procured by fraud. *See Veach* at 758–59[8]; *Aldridge* at 797.

Plaintiffs say that fraud was perpetrated via the pleadings filed in the Florida litigation on behalf of Setmakers and Defendant. They contend that they were misled by the pleadings into believing that Setmakers was an existing subsidiary of Defendant both at the time of manufacture and sale of the restaurant equipment and that in truth, Setmakers ceased to exist via merger proceedings before the equipment was sold to Vowels. Consequently, Plaintiffs maintain, they presented no evidence against Defendant during the Florida trial, and thus, ended up with an uncollectible judgment because it was against a nonexistent entity.

■ We cannot agree with Plaintiffs' assignment of error since their characterization of the applicable law fails to recognize a limitation upon the general rule stated therein. The limitation has been explained by the Florida Supreme Court as follows:

"While this court is not required to recognize the judgment of another state where the judgment ... has been obtained by extrinsic fraud, this rule is subject to the limitation that if the court of the state which rendered the judgment has expressly litigated the ... matter of fraud, that determination becomes res judicata on those points and is itself protected by the full faith and credit clause of the Constitution.... The ... fraud questions cannot be relitigated a second time in another state."

*Haas v. Haas,* 59 So.2d 640, 642 (Fla.1952).[2] *See Ratner v. Hensley,* 303 So.2d 41, 44 (Fla.App.1974). *See generally,* 50 C.J.S. *Judgments* § 895 (1947); E.H. Schopler, Annotation, *Fraud as Defense to Action on Judgment of Sister State,* 55 A.L.R.2d 673 (1957) (§ 2[b]: When a court in rendering a judgment has expressly litigated the matter of fraud, that decision becomes res judicata on that point and is itself protected by the full faith and credit clause of the Federal Constitution).

Plaintiffs' point fails because their "fraud in the procurement" claim was presented in a timely fashion to the Florida court via the motion to vacate and was rejected by that court. In their brief Plaintiffs concede that fact, saying "post-trial relief from the Florida court ... was sought and denied." The transcript excerpt from the Florida court's hearing on the posttrial motion reveals that the motion to vacate was timely filed and considered.[3] Clearly, the same underlying facts concerning the alleged fraud were presented to the Florida court in the motion to vacate as were presented to the trial court in Missouri. Under the circumstances, the rule of law urged by Plaintiffs is inapplicable.

In summary, Plaintiffs are attempting to litigate their allegations of fraud for a second time in the Missouri action. However, litigation of the fraud issue in Florida precludes reexamination of that same issue in Missouri. The reasons for the res judicata doctrine

---

**2.** We cite Florida precedent because in determining the validity, force, and effect of a judgment, we must look to the laws of the state where it was rendered. *Elmore v. Illinois Terminal R.R. Co.,* 301 S.W.2d 44, 48[11] (Mo.App.1957).

**3.** The Florida judgment was entered on March 2, 1993. A hearing was held on Plaintiffs' motion to vacate the judgment on March 30, 1993. *See* Fla.R.Civ.P. 1.530 and 1.540 (1993).

dictate that Plaintiffs should not allowed to "bootstrap" themselves into a reexamination of their fraud allegations by Missouri courts. The trial court did not err in giving full faith and credit to the Florida court's determination on the fraud issue. Point II is denied.

The judgment of the trial court is affirmed.

CROW and PARRISH, JJ., concur.